AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
U.S. District Court
District of Kansas

# UNITED STATES DISTRICT COURT
for the
District of Kansas

DEC 07 2020
Clerk, U.S. District Court
By_____ Deputy Clerk

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
In the Matter of the Search of Location Data for Cellular )   Case No. 20-m-6162-01-KGG
Telephone 316-259-8721 with International Mobile )
Subscriber Identity 310410064227407. See Attachment A. )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the _____ District of _____ Kansas _____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) | Possess with the intent to distribute controlled substances |
| 21 USC 843(b) | Unlawful use of a communication device to facilitate a drug trafficking crime |
| 21 USC 846 | Conspiracy to distribute controlled substances |
| 18 USC 1952; 1957 and 1957 | Interstate Transportation in Aid of Racketeering; Money Laundering |

The application is based on these facts:
See Affidavit.

☑ Continued on the attached sheet.
☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.
after termination of the 30 day monitoring period.

*Mona Lee Furst*
Applicant's signature

Mona L. Furst, Assistant U.S. Attorney
Printed name and title

Sworn to before me and signed in my presence. telephonically

Date: __12/07/2020__

City and state: Wichita, Kansas

*[Judge's signature]*

Honorable Kenneth G. Gale, U.S. Magistrate Judge
Printed name and title

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number 316-259-8721 with International Mobile Subscriber Identity 310410064227407 with listed subscriber of Alejandro Valerio PINEDA (the "Target Cell Phone"), whose wireless service provider is AT&T, a wireless communications service provider that is headquartered at 208 S. Akard St. Dallas, TX 75202.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of AT&T.

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**II. Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841 (possession with intent to distribute, or distribution of, controlled substances) and 846 (Conspiracy to Possess and to Distribute Controlled Substances) involving Alejandro Valerio PINEDA and unidentified subjects.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.



FILED
U.S. District Court
District of Kansas

DEC 07 2020

Clerk, U.S. District Court
By _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR KANSAS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **316-259-8721**, WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY 310410064227407 | Case No. 20-mj-6162-01-KGG<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Charles Williams, being first duly sworn, hereby depose and state as follows:

#### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 316-259-8721 and IMSI 310410064227407, with listed subscriber of Alejandro Valerio PINEDA (the "Target Cell Phone"), whose service provider is AT&T, a wireless telephone service provider headquartered at 208 S. Akard St. Dallas, TX 75202. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1)

3.      I have been a Special Agent with the DEA since 2019. I have received approximately 720 hours of specialized training at the DEA Academy, Quantico, Virginia, in conducting narcotics investigations, including drug interdiction, identification, smuggling, clandestine manufacture of drugs, methods of packaging, distribution of drugs, undercover operations, the laundering of drug proceeds, asset forfeiture, use of confidential sources, and the legal aspects of conducting drug investigations. Prior to my assignment with the DEA, I worked as a United States Border Patrol Agent at the Swanton, Vermont Station and Sanderson, Texas station from approximately 2009 to 2019. As a Border Patrol Agent, I received approximately 1,000 hours of training at the Border Patrol Academy in Artesia, New Mexico.

4.      While assigned with the DEA, I have participated in numerous drug investigations, involving the unlawful manufacture of controlled substances, possession of controlled substances with the intent to distribute, distribution of controlled substances (including heroin, cocaine, marijuana and methamphetamine) and conspiracies associated with criminal drug trafficking offenses, in violation of Title 21, United States Code, Section 841(a)(1) Possession with Intent to Distribute and Distribution of Controlled Substances; Section 843(b) Unlawful use of a Communication Device to Commit or Facilitate the Commission of Drug Trafficking Offenses; Section 846 Conspiracy or Attempt to Commit Drug Trafficking Offenses; Sections 952 and 960 Importation of Controlled Substances; and Title 18, United States Code 1952, Interstate Transportation in Aid of Racketeering, and 1956 & 1957, Money Laundering. In connection with my official DEA duties, I investigate criminal violations of the Controlled Substances Act.

5.      During the course of my law enforcement career and employment with the DEA, I have participated in numerous surveillance operations. I have also interviewed confidential

sources ("CSs"), cooperating witnesses ("CWs"), and defendants regarding various criminal activities, including narcotics trafficking. These interviews have included discussions of the use and meaning of code words to conceal criminal activity. I have also written reports and analyzed records and documents. Through my assignment with the DEA, I have gained knowledge in the use of various investigative techniques, including the use of physical surveillance, undercover agents, confidential sources, cooperating witnesses, controlled purchases of illegal narcotics, general electronic surveillance, consensually monitored recordings, investigative interviews, trash searches, and the execution of federal search and arrest warrants.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 841(a)(1) Possession with Intent to Distribute and Distribution of Controlled Substances; Section 843(b) Unlawful use of a Communication Device to Commit or Facilitate the Commission of Drug Trafficking Offenses; Section 846 Conspiracy or Attempt to Commit Drug Trafficking Offenses; Sections 952 and 960 Importation of Controlled Substances; and Title 18, United States Code 1952, Interstate Transportation in Aid of Racketeering, and 1956 & 1957, Money Laundering have been committed, are being committed, or will be committed by Alejandro Valerio PINEDA and unknown persons. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

8. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9. The United States, including DEA, is conducting a criminal investigation of Alejandro Valerio PINEDA regarding possible violations of Title 21, United States Code, Section 841(a)(1) Possession with Intent to Distribute and Distribution of Controlled Substances; Section 843(b) Unlawful use of a Communication Device to Commit or Facilitate the Commission of Drug Trafficking Offenses; Section 846 Conspiracy or Attempt to Commit Drug Trafficking Offenses; Sections 952 and 960 Importation of Controlled Substances; and Title 18, United States Code 1952, Interstate Transportation in Aid of Racketeering, and 1956 & 1957, Money Laundering.

10. On November 20, 2020, Wichita, Kansas Resident Office (WRO) investigators and a Confidential Source (CS) orchestrated a controlled purchase of one pound of methamphetamine and four pounds of marijuana from Alejandro Valerio PINEDA that was scheduled to take place at approximately 2:00 pm. In the days leading to the purchase, the CS communicated via SMS text messaging with PINEDA (using the Target Cell Phone), at the discretion of SAs Williams and Seibel, and arranged the transaction. The following text conversation that transpired between the CS and PINEDA happened throughout the following dates while both individuals were in Kansas: 11/17/2020 through 11/20/2020. The conversations went as follows:

CS: Man I'm still sick might be Friday if I can get them 4 and my friend want one of the other thing

PINEDA: When on the other?

CS: Probably Friday

PINEDA: Will have them ready for you

CS: Bet

CS: What's the ticket on that

PINEDA: On which

CS: The other thing

PINEDA: We talked about 5

CS: K should be ready tomorrow I'll let u know for sure hope it's good because I don't want to hear his mouth

PINEDA: Its good, guaranteed

CS: K

CS: I'll be ready around 2

PINEDA: Ok. Both things still?

CS: Yea

PINEDA: Ok

PINEDA: When and where?

CS: Finishing eating hit u in bout 20

PINEDA: Ok

CS: Meet me at 13th dillons in 10 minutes

PINEDA: Ok

According to the CS, the "other thing" referred to one pound of methamphetamine. When PINEDA said "the price is 5", the CS confirmed to me that this meant the one pound of methamphetamine would cost $5,000.00, and that the reference to the "four" meant the four pounds of marijuana. The CS also confirmed that PINEDA guaranteed the methamphetamine would be high quality and that PINEDA verified the CS still wanted to purchase both drugs. A time and place for the meeting was set for the Dillon's at 13th in 10 minutes from the call being made.

11. Investigators were conducting surveillance on PINEDA's residence at 1443 N. Melrose LN. Wichita, Kansas before the purchase was to occur. Agents saw PINEDA's Ford F-350 parked at the residence, which led them to believe that PINEDA was still home. As time drew near for the 2:00 pm purchase of the one pound of methamphetamine between the CS and PINEDA, TFO Mark McKee observed PINEDA leave his residence, and enter his Ford F-350. WRO investigator followed PINEDA from his residence to the Dillon's parking lot located at 8828 W 13th Street North in Wichita, Kansas.

12. At approximately 2:28 pm, SA Seibel observed PINEDA entered the Dillon's parking lot and park next to the CS's vehicle. HSI SA Jorge Fernandez then observed PINEDA exit his vehicle, carrying a white plastic bag in front of a red bag. Homeland Security Investigations SA Fernandez then observed PINEDA sit in the front seat of the CS's vehicle. The CS had an electronic monitor which allowed investigators to hear the conversation with PINEDA. Investigators overheard PINEDA asking the CS if s/he would need more methamphetamine and if s/he (CS) knew anyone that needed heroin. The CS responded that s/he would look into it. HSI SA Fernandez Then saw PINEDA get out of the CS's vehicle, empty

handed, and get back into his F-350. Both PINEDA and the CS were observed living the Dillon's parking lot.

13. The CS provided investigators with the white and red bag. The white bag contained a Ziploc style bag inside which was a substance believed to be methamphetamine. A TruNarc field test was performed on the substance, and was positive for the presence of methamphetamine. The red bag contained a green leafy substance, which, based upon my training and experience, appeared to be marijuana.

14. In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

15.     Based on my training and experience, I know that AT&T can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available.

16.     Based on my training and experience, I know that AT&T can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

17.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

18.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify

confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

19. I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

20. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

21. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
CHARLES WILLIAMS
Special Agent
DEA

Subscribed and sworn to before me on ___4th___ day of December, 2020.

telephonically

_____
HONORABLE KENNETH G. GALE
United States Magistrate Judge
District of Kansas.

10